I wonder if the attorneys who are going to argue, both of you, will step up and let us know who you are. I'm David Goodman. Good morning, Mr. Goodman. Good morning. I'm Julie Young for Zurich American Insurance Company. Good morning, Ms. Young. Good morning. You'll each be allowed 15 minutes to address the court. Mr. Goodman, you may save out from your 15 any portion you wish for a response. I think you can safely assume that we've read your briefs. Good morning. May it please the Court, David Goodman again on behalf of All American, we have a lot of briefs. And I understand that you've read the briefs. The brief overview of the case, though, hinges upon timing. And in this case, All American purchased a workers' compensation insurance policy for the policy period March 101 to March 102. After that policy period had ended, after the policy had been renewed, Zurich came and asked that All American sign a document. It said that it was a formality and that it mirrored the policy, and All American signed it. And five years later, Zurich submits an arbitration demand. That's when All American learns that there has been arbitration added. That's really when All American learns that the representations, that the policy, that the document that it signed mirrored the policy was not, in fact, correct. Would you say, Mr. Goodman, that this is part of the agreement or is this a contract for incurred loss retrospective rating agreement? I would say that if you look at the rating agreement itself, it purports to supersede and amend the policy itself. So now you would say this is part of the policy? I would. All right. And, in fact, if you look at the language in the retrospective rating agreement itself, it purports expressly to modify the policy. It refers to the policy and it refers to the, it says, supersedes any retrospective rating endorsements to the policies prior communications. What page are you looking at? Well, this would be volume 5C1099. What page of the agreement? I'm looking at the very first page. Yeah, what part of it? I'm looking at section B, the third paragraph. Okay. But it refers to itself, the document, as a program agreement, doesn't it? The purpose of this agreement is to outline the scope, description, and structure of the incurred loss retrospective rating program. And it refers to the program throughout. It does refer to the program and it refers to the policy, and, again, it says that it supersedes that. Well, let's just as far as the first two years. Now, you do agree that All-American Roofing did sign this. Oh, yes. Yes. And how would you first address the cases that say that basically when you sign a contract, you can't claim that there were misrepresentations about that contract when those claimed misrepresentations are actually in the agreement itself? Sure. I think in a couple of ways. First, I think you have to look at it in the context in which this came about. This was in the context of an insurance policy. And, again, there are also the cases that say that an insurer has an obligation to read the policy and understand it. But those are the cases that talk about the original policy. And subsequent policies, renewals of the policies, are different, are treated differently. Well, is this a renewal, this first program? No, no, it's not. All right. And was the policy being renewed when this was signed? The policy had already been renewed when this was signed. That's why timing is so important. It might be a different case had this been presented up front and had there been signature to it up front, had this been identified some way, but it wasn't. This came about, that's why I say timing really does matter. This was presented for signature after the policy had already been renewed. Now, aren't there cases that say that retrospective rating agreements are not actually part of the coverage? There is a case that Zurich cited from a different district. It was a federal case, I believe. And it was, again, it had different language. At least the language it cited and discussed in the case itself is different. So, again, I'm constrained to look at the language of what they actually asked us to sign and what it reports to be. Well, I guess I want to go back to my initial question. How do you distinguish the cases that say that when you sign something like this, that says that the program regarding the retrospective rating agreement is subject to arbitration, how do you get around the signature and the fact that there's arbitration in here? And the cases that say that someone who signs something is assumed, we presume, rather, that they've read it. Now, how do you get around the cases that say that when you sign it, you're presumed to have read it and you can't later claim a misrepresentation about arbitration when, in fact, you signed something that said that disputes arising regarding the program are subject to arbitration? Well, again, the first answer is I think that this is different than those cases given the context in which it arose and given the insurer's obligations in connection with the renewal of a policy, a policy that had already been renewed. This is going back to a policy that had already been renewed. You couldn't make that change this way because, I mean, otherwise it really goes against, and it's contrary to the statutory structure about renewals. In addition to that, I know the other... Well, they also certainly take issue with your construction of the statute. Sure. Now, what case do you cite that suggests that this is changing an agreement to arbitration? What case do you cite that suggests that an agreement to arbitrate is a change in the premiums, is a change in a deductible, is a change in your coverage under the policy? The language of the statute talks about materially alters the policy. Right. And what I was talking about there and the reason that we cited the national... was to identify specifically the distinction between Illinois law and New York law. By changing the choice of law... Now, you're going off on the choice of law. I want to talk about the arbitration. How did arbitration change any coverage that All-American had? Forget about the choice of law right now. Just tell me how arbitration takes away or materially alters your coverage under the policy. This document says and purports to modify the operation of the duties and the obligations of each party under the policy. That's what this says. What case do you have that says arbitration is a change in insurance coverage? I did not cite a case that... All right. Now you can talk about your choice of law, but you don't have a case that says arbitration materially alters coverage. No. And the point that we were making on the change, if you materially alter the policy, and again, it's the rights of the parties... Hasn't the Supreme Court talked to this about what a material alteration in coverage is under this particular statute? Yeah, in the Guillen case. Yes, right. And what did they say the coverage was in that case? In the Guillen case, they said it wasn't limited to deductibles. It wasn't limited to something that would... They discussed it, and they defined what it was, as opposed to saying what it wasn't. Didn't they say it was changing the risks? I think it actually said... I read the document. It says defines, and it says it materially alters the policy, I believe. Okay. And it's something that would, in fact, should impact insurer's rights under the policy, I believe. It wasn't an arbitration case, though, was it? It was not an arbitration. It was a lead-pink exclusion. All right. So that was a different case, but it talks about, as close as I could find, about, again, materially alters the policy. What does that mean? This document that they're pointing to says that it alters the policy and purports to supersede the rating. It said materially diminish, is what it said. Materially diminish insurance coverage. Right. And that's why we're talking about the choice of law, because there's a significant difference. Of course. I mean, if New York has a different standard, for example, with respect to this notice provision that you're talking about. I don't know. Does New York even have that provision? I don't believe that the law with respect to the notice is... So it would, in effect, take away a right you had under Illinois law? Well, yeah, and I think... Presumably, or maybe. And I think also with respect to the right... In any event, it would be a factual question, wouldn't it? It would be. Whether or not the New York application of New York law materially diminished the rights under the policy. I'm not sure whether it's a factual question or whether it's a legal question, because it's a construction of law. I was just trying to catch you up. That's all. It would still be somebody would have to interpret the policy, wouldn't it? And New York law and Illinois law. I think ultimately it's a question... And those would be questions of law. I do think that that's... So that still hasn't gotten you off the hook of avoiding a summary judgment, has it? Well, if the decision was based on the construction of law, I think that the court erred in terms of its construction of the law and finding... First off, it found as a matter of fact, I believe, that if you sign a document, you're presumed to have read it. And I don't believe that it considered the other... It had already decided that on the motion to dismiss, it had already decided that the statute did not apply. So I don't think that that issue was squarely before the court on summary judgment. Did the signator from All-American Roofing say he didn't read it? Yes. Who was that? He did say that he did not read it. Mr. Tater? Tater, yes. Mr. Tater said that he didn't. He did say on the representation that it mirrored the policy, that it was a formality... Is he required to read a renewal policy? I'm sorry? I mean, is he assumed to have read a renewal policy? No. Is he assumed to have caught all of the changes between the first policy and the renewal? In fact, Perry and Olson both say that he is not presumed to have read it. And his signature doesn't indicate that he automatically... I'm sorry. His signature on a renewal doesn't automatically presume that he has concurred on all of the changes that might have been made. Or does it? What does Perry say? I think that Perry suggests that he isn't required to understand the policy. He isn't? This case is not a renewal because he is required to understand the first policy. As opposed to the first policy. He is required to understand the first policy. Even though it may be very confusing and written in legalese, Judge Flynn talked about that as well, not just with the state of the law, but with the renewal. And in this case, especially timing really did matter because the changes were made after the policy had already been renewed. So I think that... But I don't see how you're distinguishing cases that say that after you've read something, or after you've signed something, we're going to assume he didn't read it. Correct. Which, you know, he didn't read it, but he signed it. But that doesn't help you with any of the cases that say that when you're claiming a misrepresentation has been made to you, that you can't sign a document that has the facts in it and then claim later that I didn't read it and so those misrepresentations misled me, even though it says in the face of it that the parties are subject to arbitration. Now... I have... Go ahead. I'm sorry. I didn't mean to interrupt. There's no question pending. I'm sorry. Well, I guess one of the concerns I have with that is that, in fact, furthers the mystery of what actually happened here. I think where the insurer has an obligation to speak and did not. In fact, well, I shouldn't say that it did not. Well, we're relying on a person who's dead, right? Well... Now, I'm not sure about that. That's another interesting way to put it. For the first two years, the gentleman didn't speak to All-American. He supposedly spoke to McBethy, the agent for the Colombian, right? He wasn't even the underwriter on the very first policy. Who, McBethy? No, McBethy was the broker all the way throughout. Right. The gentleman who made the misrepresentations about... Spoke to whom? Spoke to Mr. McBethy, who was acting as the broker. He was acting as an intermediary. And who from All-American said that McBethy told him that the dead man said... Mr. Taylor. Okay. So he said that McBethy told him that this other guy said... He said, why am I being asked to sign this? Because it's a formality. It mirrors the policy. Okay. Now, let me ask you this. I want your understanding. What is it that Judge Flynn conducted regarding the 03 and the 04 policies? What is it that he conducted? Well, was there a bench trial here? I don't understand. I've never heard of a summary proceeding that's somehow supposed to be some summary judgment. What was this, to your understanding? You and the other side participated in it, so you tell me what it was. It's a summary proceeding. A summary proceeding. What is that? Well, if you look at the rules, I believe he's required to conduct a summary proceeding. That's what? It should be only on whether or not the arbitration agreement was enforceable. That should have been the only issue that should have been addressed. And, actually, one of the issues that we raised relates to his ruling on the choice of law provision, which should never have been addressed until after there had been a determination on the merits about whether or not the arbitration agreement was enforceable. Well, all right. Putting that aside, putting aside his erroneous ruling that you say he made on the choice of law, that really doesn't get to whether or not you were bound to arbitration. I would agree. It doesn't. That's why it shouldn't have been decided. Okay. Well, let's assume that that was erroneously decided. How do you get around whether or not you agreed to an arbitration? And on the date that you signed it. Isn't there sufficient consideration in this document to support arbitration by both sides? I don't believe so. I think that the agreement itself, where an agreement is procured in this instance, either through a violation of the statute governing this type of discussion. That's if arbitration changes your coverage. Well, actually, I think that's also if the choice of law provision changes the coverage or anything else included. Putting that aside. I think that you have to differentiate between you're claiming he made an erroneous ruling on whether the choice of law is New York. Put that aside. Okay. Now, you still have a document that was signed that says, you know, we're agreeing to arbitrate. And there's cases that say that this program lost retrospective rating agreement is actually not part of the insurance contract. It's a separate contract that you signed. And it says that you're agreeing to arbitration. And the cases say that consideration for that arbitration is that both sides are agreeing to take their dispute to arbitration. Again, I looked at it, and I'd say that there are probably three ways. One would be the statutory issue that I raised, and I'm not going to go over that. Another would be procedural unconscionability of the way in which the signature was procured, where you have an obligation to speak. And where I actually, in this instance, had the underwriter not said anything. Well, then the judge, are you arguing that this whole summary judgment was wrong as a matter of law? Yes. But there are two pockets. There's the one pocket that I might put the 2001 and 2002 policies, and then there's the other pocket relating to the 2003 and 2004 policies. I think that they present somewhat different issues. I agree. And I don't understand what he was doing, certainly, with 2003 and 2004. I have no idea if this was. . . You're saying that he was looking at the Arbitration Act and deciding that he could have a summary proceeding to decide whether there was any question about. . . I think he wanted to take evidence so that he could try to understand why it was. . . I think what it was that was communicated was Mr. Taylor saying, I won't sign. He was clearly saying, I won't sign. He didn't sign. Just to clarify a bit, can we rewind the film to how this all began? It began with you filing a lawsuit. It was a deck action, was it not? It was. It was. Okay. Ultimately, all counts of your complaint were dismissed, or summary judgment was entered in the alternative. Summary judgment was entered on all counts. Or Zurich. There's nothing left in that complaint of yours. Actually, there are, I think, two counts that he deferred ruling on. What were they? Okay, what were they? Claims handling counts. There were two counts that. . . That dealt with the way in which the substantive dispute between the parties relates to the way in which claims were handled or mishandled. So there is no final judgment. I'm sorry to interrupt. On those two counts. . . It was a 307 judgment. It was a 307. He compelled arbitration. He never ruled on those. And they may have been the sort of things that really would have been subject to arbitration anyway, if you were required to arbitrate. That's right. Okay, and since he said ultimately that there was no question of fact that you were required to arbitrate because he awarded summary judgment for Zurich on all of the counts that you were claiming, including consumer fraud, common law fraud. I'm trying to remember. . . Presidial inconstability. Okay. And he ruled against you on all of those. He did. So that's. . . But then we get to the problem that I think Justice McBride and I are both having. In ruling on. . . Let's take what I think is the easy one first. He says in conclusion with respect to the 03 and 04 contracts. Now remember we've got two levels of standard of review here. Right. Embedded in the abuse of discretion standard on whether or not he ought to compel arbitration under 307. Right. There is embedded in that a series of questions that we reviewed de novo, i.e., his interpretation of what these contracts meant. Okay? Right. But here's what he says. You just took questions through me before. Yeah, here's what he says. I will go further than that in addressing these final ultimate issues on the two second contracts. I will make a finding based on the testimony. I will make a finding based on the testimony. Right. Does that sound like a summary judgment order coming up to you? No. No, it doesn't to me either. He says I'm going to make a finding based on the testimony about what Mr. Tapler really had in mind. Does that sound like he's addressing this as a question of law? He's getting into Mr. Tapler's mind based on the testimony. Right. He's making inferences based on that testimony. That's right. If he's getting into his mind, he's making inferential conclusions based on the testimony. Now if that's a summary judgment ruling, I have misconstrued what summary judgment is. What it sounds to me like is that this morphed into a bench trial somewhere along the way, and you guys went along with it. Well, actually, what happened was, and I can address that point too, in terms of the issue. The issue being, his decision was Mr. Tapler wasn't, he hadn't declined. He didn't sign him. He didn't sign him. He didn't sign him because, not because of the arbitration clause. Then he didn't know about it. I know, but he's saying he didn't sign, but for some other reason. He was upset with Zurich about, I don't know, too much premium, not enough whatever. The way they were handling their business. Right. And that's what he wanted to hold the program agreements hostage so he could accomplish something else. Does that sound to you like a determination based as a matter of law? That he got inside of Tapler's mind and decided to hold the whole process hostage, and that was the reason he didn't sign. The challenge, I guess. So I'm going to grant summary judgment to Zurich. I didn't. Well, and again, I think that part of the challenge, just like I have a tough time with materially alters the policy. It means something, and you could say what it does. But in terms of a summary proceeding, I think that Judge Flynn himself, he fashioned something that was. Well, we have an interesting problem here. Even if we decide that he morphed this summary judgment proceeding into a bench trial, you guys went along with everything you did. You argued both sides. You had depositions. You argued about what the testimony of various witnesses meant. Okay? So if we say up here, well, you know, it looks like what he did was he morphed the summary judgment proceeding into a bench trial. We send this all back to Judge Flynn, who is a very able and a very good judge. And we say to Judge Flynn, Peter, you conducted a bench trial from our perspective, or at least from my perspective. What's he going to do? He's going to do it all over again, only this time he's going to make findings based on the evidence rather than findings based on the motion for summary judgment. Is there anything new that will come in? I guess the question I would have is, well, part of it is he never addressed in this summary proceeding, he did not address the 01 and 02 policy. There was actually no evidence presented on that other than what was part of the, you know, submitted in opposition to the motion. Did you cite the statute 143.17a in your brief or in your appendix? What page? Page 33. Okay. And where on page 33? In the middle. Okay. So where is this? The trial court when I found it, 215 ILCS 5. No, I meant the language. I'm sorry. Yeah, I meant did you ever put your statute in the front of your brief that the rule requires you to do so you use the language of the statute instead of your own spin on it? Because you keep saying materially alters the policy, which you've missed and you've left out a word that's in the statute in my opinion. But I thought it said that, you know, 143.17a requires that you get advance notice only where the insured increases renewal premium by 30% or more, imposes changes in deductibles that materially alter the policy, or three, imposes changes in coverage that materially alter the policy. That's correct. To use those words that have been thrown around, does that mirror the language of the statute? It's coverage that materially alters. You're correct. Okay. So coverage is a key component of that statutory language, isn't it? Yes, that's why I was going back to the choice of law. All right. So now let me just ask you, are you saying that there are claims? This is on a different matter. I have some questions about jurisdiction now because I am concerned that this, there's no final judgment in this case because you said that Judge Flynn held over how many counts of your complaint? Two counts. Okay. So when he decided this choice of law thing, is that a final order that we're reviewing now? When he ruled on the choice of... How do we ever, how does that become a final judgment that we're looking at right now because you're appealing from his lifting of a stay? Procedurally, when he compelled arbitration, he compelled arbitration actually of all the claims. He never actually came back and said, he said, I defer ruling on these two counts. Then he sent the whole matter, everything, all the claims so that these all must be arbitrated. And they probably, presumably, under New York law? Presumably, as to the first two policy periods. The other two policy periods are... Are in Illinois. Right. So you could get a different result, equally, from the same arbitrator. That's exactly right. The standards would be different. The law that would be applied would be different. The insurance rights under the policy would be somewhat different. Well, wasn't that one of his concerns about sending these piecemeal, sending some to arbitration and then not the others, 2003, 2004? Well, he could have deferred... Not that I think that's a valid concern. It seems to be, though, when you read his... Oh, I think that that's correct. But I think that, again, each of the... with separate obligations under the claims. Okay. I'm not really sure from your brief that... Are you appealing the dismissal of certain counts and you're appealing summary judgment of certain counts? Or was this all summary judgment? I don't quite know what you're... We are appealing the order that compelled us to arbitrate. So that would be, on some of the counts, that would be dismissal. In others, it would be summary judgment. Well, how do we get to that if it's not clear which ones were dismissed with prejudice and which ones were summary judgment entered? I'm not sure. How do we decide whether it was properly sent to arbitration if I can't tell from the brief which count was dismissed with prejudice and which one went to summary judgment? I don't know. Can you tell me? Can you give me a rundown from all your counts? Sure. Which ones were dismissed with prejudice? Sure. Which ones went by way of summary judgment? Sure. Count one, which sought the declaratory judgment really effectively as to the arbitrability, was decided on summary judgment. Okay. And everything that was decided was decided on summary judgment. The things that he didn't decide, he deferred simply because he figured that would be something that the arbitrator would ultimately go to. Actually, he had dismissed account two, which dealt with the choice of law provision. He granted a motion to dismiss the choice of law, the claim as to the choice of law. Let me interrupt you again. The way this case started was not first by your filing of a DEC action, but it first came about because they demanded arbitration. That's correct. All right. Okay. So then you get in front of Judge Flynn and you filed a claim with about ten counts, or were there nine? What was the final? There were ultimately 14. 14. Okay. Ultimately 14. Can you tell me now which ones were dismissed and which ones were summary judgment was granted in favor of Zurich? Sure. Count one was summary judgment. Count two, which dealt with choice of law, was dismissed. Count three, which is a breach of contract claim with summary judgment. Count four and count five, one was breach of contract for claims of mishandling. The other was consumer fraud with respect to the mishandling. Those were the ones that he deferred ruling on. He deferred ruling on the consumer fraud? The consumer fraud that dealt with the claims handling. There were two consumer fraud claims. One dealt with claims handling. Okay. I got you. When I say that he deferred, I think what he did, he didn't rule on it. I don't care what you call it, he didn't make a ruling. There's nothing appealable there at the moment. Right, because his information was that it was subject to arbitration. So they went to arbitration? Not yet. That's what we're going to decide. We're before arbitration now. We need to know whether you have a final judgment or not. You're coming here under the lifting of a stay of arbitration, 307. Right. And yet it seems like he deferred some cases, but are you telling us there's nothing left in his? There's nothing left before him on his docket because he ordered that he compelled arbitration on everything. So what about six you said? Six is consumer fraud that dealt with the imposition of the arbitration clause. That's summary judgment. Seven was fraudulent inducement. It's a common law fraud. That's summary judgment. So he had statutory and common law, and he dismissed or he granted summary judgment. He granted summary judgment. You failed to establish. Correct. He ordered those to arbitration, is that what you're saying? No. No, he didn't. He said that those did not give us a basis to avoid the obligations under the arbitration agreement. So did he dismiss them with prejudice? No. He granted summary judgment in favor of Zurich on those. He, in effect, said there was no consumer fraud and there was no common law. All right. But a summary judgment motion. Right. Yes. All right. Well, I'm sorry, but the language in your brief goes from dismissing and summary judgment. So I don't know, and it's not set out. What about eight? Eight. Eight, he granted summary judgment on as well. Oh, right. Nine, he had dismissed as a coercion claim. He dismissed that earlier. Ten was procedural unconscionability. Again, he found that there wasn't any, so he granted summary judgment on that. Eleven was, again, it had to do with substantive unconscionability. He dismissed that one with prejudice. It had to do with the choice of law provision. Twelve was the violation of the insurance code about the renewal dismissed. Thirteen was a consumer fraud claim. It had to do with, again, the choice of law. That was dismissed as well. So should your brief tell us that not only are you appealing the judge's vacating of the stay, that certain counts went to arbitration, but this is also an appeal from a final judgment disposing of your entire complaint? Are we really there? Is that what this is? Should we be informed then that you're appealing summary judgment that was granted and a dismissal with prejudice that was granted on a number of counts? Is it a final judgment? I need to know that. I understand that. And the problem that I have is that based on the way it was addressed, it really isn't a final judgment as to the merits, the substantive merits of everything. It really is an order compelling arbitration and the merits of the disputes. I mean, he shouldn't have ever addressed the choice of law. I would argue, but he shouldn't be able to get to that issue because the very first issue he'd have to find is whether or not the disputes are subject to arbitration. Exactly. Wasn't this a final judgment on what was before the judge? Yes, it was a final judgment as to whether or not the disputes were subject to arbitration. It's a final judgment of all the matters that were before the judge. No, because he deferred ruling on a couple of the counts. But that doesn't make it inappropriate for a 307 because under 307 once he makes a decision about arbitration, it's appealable. Yes, that is appealable, but not other matters that are left with the judge. I understand that. But Mr. Goodman will ultimately argue that we'll never get to those other matters if we reverse him on the arbitration issue because that's what he's really concerned about. And tell me then, which of these counts went to arbitration? Because we're not going to discuss any of the other counts. Count one, count three, and count ten. So those are the only counts you're concerned with? Those are the ones that I think are really proper. We really need to hear from Ms. Young. Maybe she can shed some light. At least she'll give us Zurich's point of view. Okay. Okay. Thank you. Is that okay? Then we can come back to him if you have more questions. I have some questions for Ms. Young. Good morning. May it please the Court. Julie Young for Appleease, Zurich American Insurance Company. Essentially, this case boils down to two key questions. One, did the parties agree to arbitrate? And two, should the court enforce that agreement? And the trial court correctly answered both questions yes. There are four policy years at issue, four different program agreements. The first two years, those agreements were signed by All-American. And in the context of some of the procedural discussion that we've been having this morning, the first two years where the agreements were signed, those were all disposed of by Judge Flynn on either a motion to dismiss or a summary judgment type basis. Well, isn't the insurance defense here a fraud in the inducement of the signed agreements? Yes. That's one of the claims that the insured had. And those particular claims were decided by Judge Flynn on the summary judgment ruling. And basically they're- Well, can't something like that be decided on summary judgment rulings, fraud in the inducement, without taking evidence? Absolutely. The Nielsen case is dispositive on this point. That case says that when you sign a written agreement and you have the opportunity to read that agreement, you can't come back later and say that there was fraud in the inducement as to a particular term. Essentially- Ms. Young. Yes. Judge Flynn did not send that count to arbitration. Is that right? That's right. What do you understand are the counts that we're reviewing? We should only be reviewing, as far as I understand. 307 allows an appeal from the lifting of the stay as to only those counts that were ordered to arbitration. Now, what is your opinion as to which counts were ordered to arbitration? There's 14 accounts that All-American had asserted. Essentially, there's two particular accounts that deal with the merits of the parties' disputes, which are claims handling. Judge Flynn deferred ruling on those two particular accounts and sent those to arbitration. Everything else before the court was essentially an attack on the arbitration provision, and that is what I believe this appellate court is deciding here today. With respect to Judge Flynn's ruling on the first two contracts- Yes. He stressed the fact that- I don't know. What phrase would you basically use to describe what they signed? Side agreements? I would call it a separate agreement. A separate agreement. A program agreement. Program agreement. Something that is separate and a part of- Is it distinct from the underlying insurance policy itself? Yes. So you would take the position that a case like Perry isn't truly applicable to what they signed? That's right. A case like Perry deals with coverage. Well, no, wait. I know it does, but so does what they signed. Respectfully, no. Well, you changed the goalposts with what they signed. You said Illinois law will no longer apply. New York law will apply. Can we assume that that altered in some way your coverage responsibilities? The answer to that question is no, because the separate agreements do not address coverage. There's no insuring agreement. So even though it may alter the rights of the insured because you've changed the choice of law, it doesn't alter the coverage. That's right. It alters the rights in other respect. The separate agreements- You know, that's spoken like a true insurance lawyer. You know, I love it. You know, this is wonderful. Okay, so what you're basically telling me is Perry is inapplicable to this case. That's right. Would you agree that you had a problem? Nothing about the separate agreement alters coverage. So I'm not even sure that we would have a problem under Perry because Perry still requires a material alteration. But Judge Flynn made clear that he felt that if you signed it, you're bound by it. The language from Perry with respect to renewal policy seems to leave a crack open in the door for the insured to argue that they're under no obligation. They're under less of an obligation to scrutinize the policy than they were with the original policy. Would you agree that that's at least what Perry says? That's right, in limited circumstances. Okay. But one of the reasons why the program agreements are different here, these are essentially financing agreements. Okay. There's credit risks because these policies are law sensitive. So the financing parts are addressed in the program agreements. Now, there was a lot of deposition testimony with respect to what the broker said to the insured and what he had heard from the insured, okay? Right. But it basically came down to an allegation by the insured that he was told before he signed. Now, there's a disputed question, not of law, but of fact as to when he signed it, isn't there? Was he told that these agreements, side agreements, whatever, mirrored the original policies? And he said he signed that with the understanding that there were no substantive changes whatsoever. That's his testimony. Testimony, okay? It's not a question of law. This is the question of what he thought he was signing. He thought he was signing an agreement, he testified, that mirrored the original, okay? The testimony was in dispute at some points in time. Was the testimony in dispute? Right. Well, what are we doing with a summary judgment? Because Judge Glenn said it didn't matter. It wasn't a material fact? It didn't matter. It didn't matter that he might have been misled about what he was signing? Even if we accept All-American's characterization of what Mr. Schell said. That's what they pled. When you've got a summary judgment in front of you, you take the pleading plus the testimony. They pled that they were misled. He testified he was misled. What more do you need to overcome summary judgment? The judge had to decide they didn't believe. What's his name, Tatler? He didn't believe him. He didn't have to decide that because he had to essentially decide that it didn't matter. Even if we took it as true, we have the Nielsen case which says he had the opportunity to review the agreement before he signed it. He can't rely on Mr. McBethy's or Mr. Shelby's representations as to the terms of the agreement. Unless Perry is applicable to these kinds of agreements. Well, Perry would only apply if there was a material change in coverage. So first we would have to cross that line. And you're arguing and will insist until the very end that changing the choice of law from Illinois to New York is not a material change. Not a material change in coverage. And your best case for that is? Well, Perry itself talks about coverage. The statute, Section 193. You're going to rely on Perry now. To the extent that it provides you can only have these changes if there's changes in coverage. Would you agree with me that it's going to be pretty hard to find an Illinois case that covers this kind of peculiar fact situation that we've just been discussing? Yes, I would agree with that. Thank you. Because I didn't find one in your brief or in his. So I assume there isn't one that precisely addresses this issue of what is the nature of these agreements. They're common. I know that. But they're not renewal policies. Right. If you look at the case. But they do bind people in the way a renewal policy would bind people. They bind people in a way that a contract would. Right. And they bind people retroactively, don't they? It depends when you enter a situation. They certainly did in this case. There was nothing about arbitration in the original 2001 and 2002 contracts about arbitration, was there? Nothing in the policies. Right. Nothing in the policies about arbitration. Nothing in the policies about New York being the choice of law. Correct. And there's nothing in the law that says you can't agree to arbitration after the fact on a particular contract. Right. You can contract to agree to arbitration after you've had another contract. Right. But if somebody comes up to you and hands you this document and says this is just a, you know, basically we're reaffirming what you originally agreed to, it mirrors the original policy. Are you bound to read it? And Judge Flynn, that's what he decided. He decided that you can't possibly make a disputed question of fact out of this issue as to whether or not he was misled. That's right. Because he had an opportunity to read it. He had the opportunity to read it. Because right above the signature it says this agreement shall be governed by and interpreted in accordance with the laws of the State of New York. So we have to write an opinion here. We either have to agree with Judge Flynn that having read it and signed it, or having signed it, it's presumed that he read it. And having signed it, he's bound by its terms. Okay? Just as though it were an original policy and not a renewal. Well, the cases don't say that you read it. I know they don't. They don't say that you read it. What they say is you can't come back later and say, well, even though it says this, no, I didn't read it because I was relying on somebody else reading it for me and telling me what it said. Right. I mean, if we're going to allow that to happen, then there's going to be a lot of contracts where you can say, well, you know what? I didn't read it, and he told me it really said this. Even though I signed it and it says this, I didn't understand that because I have other people do my reading for me and interpreting all the documents I signed for me. And even though I'm a grownup, I still do that. That's a very good analysis of her argument. But it doesn't do justice to what Mr. Goodman is suggesting we ought to consider. I don't know what the judge did for 2003 and 2004. I don't know how he got there. I'm trying to find out if this was a bench trial and that both of you agreed to proceed to a bench trial or what, because it certainly isn't a summary judgment proceeding because the judge made credibility decisions. And from what Judge Cahill is suggesting, he also did that for the first part of this proceeding. He made decisions about credibility. And I don't know that there's any cases that allow that on summary judgment. For the first? As long as it's not a material issue. But, you know, there is certainly an argument to be made that when you change the law, that that can affect coverage. If Illinois allows a certain presumption but New York doesn't, can't that change the coverage? If we were talking about the policy itself that contained the insuring agreement, that talked about the risks and what you need to pay and when you needed to pay a particular claim, it would be talking about coverage. Nothing like that is included. But we've got to make a policy decision here with respect to imposing arbitration on an insured, who at the time he entered into the original policy was assumed that there was no arbitration clause. A period of time passes through which he is covered, quote, unquote. It's a peculiar policy in the sense that there are adjustments that are made at the end of the policy period. Not uncommon among big commercial companies and big commercial insurers with respect to this kind of insurance, which in this case was Workman's Comp. And there are all kinds of battles and feuds that go on after the policy period has ended with respect to how much the premiums should have been, what the agreements were with respect to those premiums. And a lot of retired judges make a lot of money arbitrating those kinds of cases, okay? We know all about that. But this one's peculiar in the sense that along comes the side agreement. And the side agreement in time is after some of the disputes, some of the occurrences, to use an insurance term, have taken place. So here was an occurrence in 2001, okay? And had they immediately filed a claim or something like that with respect to that occurrence under 2001, it's probably pending. The claim is pending at the time that you present them with the side agreement. And you say to them, hey, we've got to arbitrate that because you signed this arbitration agreement that's retroactive. We didn't tell you it was retroactive. All we told you was, what did they tell them? They didn't tell them anything. They just said, here it is. Except he claims that his broker, there wasn't a party to this lawsuit, is there? Interesting. Somewhere down the line he might be. He claims that the broker told him that this is nothing special. It just mirrors the original policy. And relying on that, having signed the original policy and knowing what that was, nothing about arbitration, nothing about New York law, he scribbles his signature on it. And lo and behold, he discovers later that he signed something that he should have read, right? And this is where Judge Flynn decided as a matter of summary judgment, he's bound by what he signed. Now, we as a matter of public policy have to decide whether this is more like a Perry situation or it's unique because you don't have a case that says, with respect to these side agreements that are signed after the policy has been executed and after occurrences have taken place and damage has occurred, that it now can retroactively apply to that dispute. Should there be one? So what do you suggest? What case should we rely on if we write in your favor? I would rely on three different cases. Okay. Although there is not an Illinois case on point, we cited in our brief to three different cases. I thought you were going to go outside of Illinois law. Thanks a lot. These cases may not be binding, but they are persuasive and they do address the facts before this court. Right. The Brayman case where the- They're all in your brief. The Brayman case, the Grove Lumber case, the Watts case, all three of these cases address circumstances where you have a separate agreement. The court finds that it's permissible for an insurance company- Watts is the Seventh Circuit case, right? Watts is the Seventh Circuit case. What state is it in, though? Was it in Illinois? Yes, it was. I haven't read it. I noticed you cited to it. That's- Where is it here? I'm looking at the standard of review cases, but that is the one I wanted to get. You cite it in your brief. Thank you. Brayman, the Lumbers, the Watts. Okay. One is Seventh Circuit. Then you've got one, incidentally, that you're involved in. Yes, Grove Lumber. That's the Seventh Circuit case discussing deductible agreements that are separate and distinct. Yes. Okay. Brayman, which is Third Circuit. Third Circuit. And the Brayman case actually involved a case that had a very similar fact pattern, where the agreement was signed after the policy year. Okay. And that case follows the same principles in Illinois. Why don't you- Did you ask to remove it? We did not ask to remove it. Both parties are Illinois residents. Yes, I know, but you were also talking about New York law. I mean, you could have cobbled together a reason to get it over to federal court, couldn't you? I guess that's debatable. Well, even though you're relying on these three cases for your first two years- Right. How do they help you with this never signing the last two years? Well, the last two years are the years where we actually made it to something that was very akin to a bench trial, as you've mentioned. We presented witnesses. There was evidence that was presented. Yes. And the court made a fact determination that although All-American had not signed these agreements, the agreements were presented at the beginning of the policy year. The parties operated under the agreements for years. How did they operate under them when these relate to these other matters? They're not about the coverage. They're not about- You say on one hand it doesn't change the coverage. They paid the premiums, and they're covered under the policy. Fine. This other thing you've called a separate agreement. How can you use these cases to support your position that they agreed to them because they didn't sign? Now, on the one hand, I can understand saying if I signed something, I've read it, and if it's right above my signature, it's kind of silly of me to suggest I didn't understand that. But on the other hand, if I refuse to sign it, and I refuse to sign it, and I just don't sign it, and that policy period has already gone by, 2003 is gone, why should I be bound by this separate agreement? I never signed it. One of the issues that Judge Flynn determined at the hearing- At the hearing. Based on the testimony, one of the questions he considered, was there a definitive no? Did they ever refuse to sign it? Or was it something that had simply gotten put off, and put off, and put off, while All-American was trying to use it as leverage for other issues? And that was essentially- He made that finding. He made that in a summary proceeding. Right. He called it a summary proceeding. But he went inside Mr. Tater's head and said that this real motive for not signing was nothing to do with arbitration. That's exactly right. And I think after a bench trial, hearing all of the witnesses and all of the testimony, that's the trial judge's job. The credibility of the witness is such that I'm going to find that he had an ulterior motive based on the testimony I've heard. Right, and that was- So I'm going to enter summary judgment preserved. Well, he entered an order. He entered an order. It was not following- No, I don't. I'm not trying to back you into a corner. Well, do you think it was a bench trial? You deal with the record you've got in front of you, and you've got to live with it. It's not your fault Judge Flynn said what he said. You have to defend your position. And, incidentally, his ruling, and I don't blame you for trying. Was it a bench trial, or do you know? It may not have been called a bench trial, but it was certainly conducted like a bench trial. How would we review that then? Under a manifest way? The standard of review, there's a case that we presented in our brief that had to do with a situation where arbitration was compelled after this type of proceeding. The court reviewed it under an abuse of discretion standard. I believe both sides cited to abuse of discretion standard with respect to those two particular years. Okay. But, actually, if it's a bench trial, that's not the standard review. It's manifest way, isn't it, then? Right. Under either standard- In any event. I have one other issue that I want to toss out there just to drive you a little crazy. And that has to do with an occurrence under an insurance policy where the event that's insured has already occurred. Okay. And the terms and conditions for resolving a dispute over the insurability of that occurrence is changed after the occurrence takes place. Nobody talked about that. But, clearly, at the time that this side agreement was presented to the insurer, they'd already happened. And now you're saying resolutions of disputes with respect to those things that have already happened will be governed by arbitration, rather than by the normal procedures in the court of law. Do you have any cases on that? I have two responses to that. Okay. You were ready for it. One is a statute as opposed to a case. Okay. Which is the Illinois Arbitration Act, which says you can agree to arbitrate not only future disputes, but also existing disputes. Okay. So it wouldn't matter if that happened in the past. Okay. So you appeal to the Arbitration Act for that. Yes. That's a good point. Now, what's your second answer? The second answer has to do with it almost demonstrates the nature of the agreement. The occurrences that you're talking about, the claims that you're talking about, those would all be paid out exactly as the policies provided. These separate agreements don't have anything to do with that. The types of things that are addressed in the separate agreements are things like collateral, how to resolve disputes about payment. Those types of things wouldn't change how Zurich handled the claim, paid the claim. It would be basically separate issues. Okay. Didn't he rely on the Arbitration Act to conduct his summary proceeding? Isn't that what he harkened back to? Yes. That's exactly right. And do you recall what provision there that he looked at? Well, the Illinois Arbitration Act does provide for these summary type proceedings. All right. And that's what he was using. Yes. All right. You've answered my question. Thank you. I don't have anything else. Thank you very much. Thank you. Mr. Goodman, you get the final word. It's your break. Briefly, please. We've been at this an hour. The final word going back to the last question, the last scenario that you talked about is that all of the occurrences actually of the fall within the first policy period had necessarily occurred by the time this was presented. And the disputes that we're talking about, the obligation to pay, specifically what Fast Motor talks about, talks about why it is that an insured in Illinois is entitled to this additional protection in a retrospectively rated situation because their mishandling of claims drives up the premiums. And so after the fact, that's where the imposition of the New York law, it does make a difference. It does materially change the coverage under the policy. Anything else? Thank you both. The case will be taken under review.